UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| LUCY SITTING CROW, | ) | CIV. 13-5022-JLV |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER |
| vs. | ) | |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner, Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

Plaintiff Lucy Sitting Crow filed a complaint appealing from an administrative law judge's ("ALJ") decision denying disability benefits. (Docket 1). Defendant denies plaintiff is entitled to benefits. (Docket 6). The court issued a briefing schedule requiring the parties to file a joint statement of material facts ("JSMF"). (Docket 8). The parties filed their JSMF. (Docket 9). For the reasons stated below, plaintiff's motion to reverse the decision of the Commissioner (Docket 12) is denied.

**FACTUAL AND PROCEDURAL HISTORY**

The parties' JSMF (Docket 9) is incorporated by reference. Further recitation of salient facts is included in the discussion section of this order.

On August 13, 2008, plaintiff Lucy Sitting Crow filed an application for disability benefits, alleging disability beginning September 9, 2006. (Docket 9

at ¶ 2).  A hearing was held on March 18, 2010, and an unfavorable decision was issued on April 9, 2010.  Id.  The Appeals Council denied Ms. Sitting Crow's request for review and the decision of the ALJ became final.  (Administrative Record at pp. 59-61).[1]  Ms. Sitting Crow did not appeal this ALJ decision.  (Docket 9 at ¶ 2).

On August 2, 2010, Ms. Sitting Crow filed another application for Social Security disability benefits, alleging disability since April 10, 2010.  Id. at ¶ 1.  The claim was denied initially on September 21, 2010, and upon reconsideration on December 22, 2010.  (AR at p. 8).  Thereafter, Ms. Sitting Crow filed a request for a hearing and an evidentiary hearing was held on May 16, 2012.  Id.  On June 4, 2012, the ALJ issued a decision finding Ms. Sitting Crow was not disabled and denying benefits.  Id. at pp. 5-21.  Ms. Sitting Crow subsequently sought review from the Appeals Council.  Id. at pp. 1-3.  The Appeals Council denied Ms. Sitting Crow's review request.  Id.  The ALJ's decision constitutes the final decision of the Commissioner of the Social Security Administration.  (Docket 9 at ¶ 3).  It is from this decision which Ms. Sitting Crow timely appeals.

This issue before the court is whether the ALJ's decision of June 4, 2012, (the "2012 ALJ decision") that Ms. Sitting Crow was not "under a disability, as

---

[1]The court will cite to information in the administrative record as "AR at p. ___."

2

defined in the Social Security Act . . . from April 10, 2010, through [December 31, 2010]" is supported by substantial evidence in the record as a whole. (AR, p. 17); see also Howard v. Massanari, 255 F.3d 577, 580 (8th Cir. 2001) ("By statute, the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.") (internal quotation marks and brackets omitted) (citing 42 U.S.C. § 405(g)).

## STANDARD OF REVIEW

The Commissioner's findings must be upheld if they are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006); Howard, 255 F.3d at 580. The court reviews the Commissioner's decision to determine if an error of law was committed. Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Cox v. Barnhart, 471 F.3d 902, 906 (8th Cir. 2006) (internal citation and quotation marks omitted).

The review of a decision to deny disability benefits is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . [the court must also] take into account whatever in the record fairly detracts from that decision." Reed v. Barnhart,

399 F.3d 917, 920 (8th Cir. 2005) (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)).

It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the Commissioner's decision if that decision is supported by good reason and is based on substantial evidence. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005). A reviewing court may not reverse the Commissioner's decision " 'merely because substantial evidence would have supported an opposite decision.' " Reed, 399 F.3d at 920 (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)).

## DISCUSSION

"Disability" is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment [or combination of impairments] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

The Social Security Administration established a five-step sequential evaluation process for determining whether an individual is disabled. 20 CFR § 404.1520(a)(4). If the ALJ determines a claimant is not disabled at any step of the process, the evaluation does not proceed to the next step as the claimant is not disabled. Id. The five-step sequential evaluation process is:

> (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment–one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform . . . past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

Baker v. Apfel, 159 F.3d 1140, 1143-44 (8th Cir. 1998). The ALJ applied the five-step sequential evaluation required by the Social Security Administration regulations. (AR, pp. 10-17-18). At step five of the evaluation, the ALJ found there were jobs existing "in significant numbers in the national economy that [Ms. Sitting Crow] could have performed" and she was, therefore, not disabled. (AR at pp. 16-17).

## PLAINTIFF'S ISSUES ON APPEAL

Plaintiff's brief in support of her motion to reverse the decision of the Commissioner identifies two main issues. (Docket 12). First, whether the ALJ properly discounted Ms. Sitting Crow's credibility; and second, whether the ALJ properly rejected the opinions of Dr. Stephen Skaleski, Ms. Sitting Crow's treating physician. Each issue will be addressed separately.

**1. Did the ALJ properly assess Ms. Sitting Crow's credibility?**

Ms. Sitting Crow argues the ALJ did not have "good reasons" for finding her subjective complaints of pain were not credible. In response, defendant

5

argues the ALJ's credibility determination is supported by substantial evidence in the record as a whole.

The ALJ determines the weight attributable to a claimant's subjective complaints, including pain, according to the framework created in Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). Five Polaski factors guide the ALJ's credibility determinations: "1) the claimant's daily activities; 2) the duration, frequency, and intensity of the pain; 3) the dosage, effectiveness, and side effects of medication; 4) precipitating and aggravating factors; and 5) functional restrictions." Choate, 457 F.3d at 871. The ALJ need not mechanically discuss each of the Polaski factors. See Goff v. Barnhart, 421 F.3d 785, 791 (8th Cir. 2005). Although the ALJ can discount a claimant's subjective complaints for inconsistencies within the record as a whole, "the ALJ must make express credibility findings and explain the record inconsistencies that support those findings." Dolph v. Barnhart, 308 F.3d 876, 879 (8th Cir. 2002). The court will not disturb the decision of an ALJ who seriously considers, but for good reason expressly discredits a claimant's subjective complaints. See Haggard v. Apfel, 175 F.3d 591, 594 (8th Cir. 1999).

In this case, the ALJ acknowledged the analytical framework for credibility determinations and stated he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements

of 20 CFR 404.1529 and SSRs 96-4p and 96-7p." (AR at p. 12). The ALJ noted Ms. Sitting Crow has a history of rheumatoid arthritis and "retained a light exertional level with some limitations". Id. at p. 13. The ALJ also noted Ms. Sitting Crow was previously found not disabled on April 9, 2010, and that she was now claiming to be totally disabled on April 10, 2010, for the same reasons as in her previous claim. Id. The ALJ concluded Ms. Sitting Crow "is not as restricted as she alleges" and did not generally receive "the type of medical treatment one would expect for a totally disabled individual, with relatively infrequent trips to doctors for her alleged disability symptoms for treatment that has been essentially routine and/or conservative in nature." Id.

The ALJ recognized Ms. Sitting Crow's "impairments may cause her some discomfort and pain," but found her statements regarding impairments and her inability to work were "not fully credible." Id. The ALJ provided several reasons for finding Ms. Sitting Crow's testimony not credible. The ALJ found Ms. Sitting Crow had no medical treatment records around the date of her alleged disability, April 10, 2010, "which would indicate such a severe increase in symptoms" since the prior uncontested ALJ decision of April 9, 2010. Id. The ALJ also observed that in May 2010, Ms. Sitting Crow presented to the emergency room with a noted "history of taking pain medications inappropriately or not at all" and that she had been taken off controlled medications as a result of inappropriate use. Id. at p. 14.

The ALJ noted Ms. Sitting Crow's exams with her treating physician did not support her claims of disabling pain. In August 2010, her treating physician, " 'Dr. Skaleski, found no edema, no clubbing, no cyanosis, full range of motion at the shoulders and wrists, nor erythema or swelling of the joints of the upper or lower extremities, strength and sensation normal in hands and legs, and gait normal.' " Id. (citing Ex. B-4F/38). In September 2010, Dr. Skaleski wrote that Ms. Sitting Crow was " 'doing okay so far, but had to miss an appointment due to her niece giving birth," but that her exam was " 'unchanged since last visit.' " Id. at p. 14 (citing Ex. B-5F/9). In October 2010, Ms. Sitting Crow's medical records show she was not currently on any disease modifying agents but that she returned to her doctor to " ' discuss the possibility to resume care.' " Id. at p. 14. She returned again in November hopeful " 'to resume chronic pain care.' " Id. The November exam found "no peripheral edema in the pedal or pretibial distributions, no calf tenderness or cording . . . , negative Homan's exam, . . . mild Valgus deformities of both great toes, and moderate Varus deformity of the fifth digits bilaterally, . . . moderate overlying edema, and erythema of these joints with moderate tenderness to palpation, . . . prominent metatarsal heads on digits two through four on both feet with mild hammertoe deformity on the left fourth digit, . . . [and] dystrophic nails." Id. (citing EX. B-7F/18). In December, Ms. Sitting Crow

returned with exam results unchanged from her November appointment. (AR at p. 15).

The ALJ then noted with regard to her daily activities, Ms. Sitting Crow "attends to her personal needs and hygiene, prepares meals, performs household chores including laundry, dusting and dishes, goes grocery shopping and clothing shopping 'weekly for 4 hours,' and for enjoyment she does ink pen collecting, jigsaw puzzles, sewing, reading, and watching television." Id. at p. 14.

Ms. Sitting Crow argues the ALJ's finding she did not receive the type of care that would be expected for a totally disabled individual is not a "good reason" for finding her not credible. (Docket 12 at p. 7). Ms. Sitting Crow asserts her condition cannot be surgically corrected and is most often treated with medications and/or injections, which she received. Id.

Despite her treatments, the ALJ noted Ms. Sitting Crow had a history of taking her medications inappropriately or not at all. (AR at p. 13). The parties' joint statement of facts also indicates Ms. Sitting Crow has a history of misusing prescription narcotics and violating her pain contracts with doctors. (Docket 9 at ¶¶ 14, 24, 31). Ms. Sitting Crow's history involving her medications and pain contracts is a valid reason to question her credibility. See 20 CFR § 404.1529(c)(3)(iv) (the ALJ may consider the types and dosages of medications in evaluating credibility). Ms. Sitting Crow also had gaps in her

9

treatment. The ALJ noted Ms. Sitting Crow received no treatment between December 2010 and March 2011. (AR at p. 14). In August 2011, Dr. Skaleski saw Ms. Sitting Crow had not refilled her prescription for four months and was overdue to restart her medication regimen. (Docket 9 at ¶ 37). Ms. Sitting Crow also missed appointments on occasion. Id. at ¶ 39.

The ALJ concluded that the objective medical findings did not support Ms. Sitting Crow's assertion of disabling pain. Particularly, her treatment notes did not generally find swelling, redness or limited range of motion. (AR at p. 14). The court finds the ALJ properly discounted Ms. Sitting Crow's subjective complaints. Ms. Sitting Crow's history of inappropriately using pain medication or not taking her medication coupled with the medical findings provide substantial evidence on the record as a whole to support the ALJ's decision to discredit Ms. Sitting Crow's subjective complaints of pain.

Ms. Sitting Crow also asserts that the ALJ's conclusion her daily activities were not limited to the extent one would expect given the complaints of disabling symptoms was not a "good reason" to find her not credible. (Docket 12 at p. 7). When a claimant's activities are inconsistent with their claimed level of disability, an ALJ may properly reject the claimant's testimony. Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001). In this case, Ms. Sitting Crow testified she could only sit for about 30 minutes, or walk for only

five to 10 minutes. (Docket 9 at ¶ 52). Ms. Sitting Crow claimed she had difficulty grasping objects. Id. at ¶ 53.

The ALJ found Ms. Sitting Crow's daily activities were inconsistent with this level of disabling limitations. Ms. Sitting Crow testified she could drive her daughter to work, cook, do dishes, do laundry, drive herself on errands, and shop for groceries. Id. at ¶¶ 47-48. The ALJ also noted Ms. Sitting Crow enjoyed jigsaw puzzles and sewing. (AR at p. 14). Even with Ms. Sitting Crow's alleged difficulty of grasping objects and limitations on sitting and walking, the evidence in the record as a whole supports the ALJ's finding Ms. Sitting Crow's daily activities were inconsistent with her claimed limitations. See Medhaug v. Astrue, 578 F.3d 805, 817 (8th Cir. 2009) (noting "acts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain.").

The ALJ properly considered Ms. Sitting Crow's subjective complaints and found they were not credible in light of the entire record. Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006). The court must "defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so." Schultz, 479 F.3d at 983 (internal quotation marks and citations omitted). The ALJ's credibility determination as to plaintiff's pain stands and Ms. Sitting Crow's challenge to the 2012 ALJ decision on this ground is denied.

11

### 2. Whether the ALJ failed to assign adequate weight to Dr. Stephen Skaleski's opinion.

"A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." House v. Astrue, 500 F.3d 741, 744 (8th Cir. 2007) (citation and internal quotation marks omitted). However, "while entitled to special weight, it does not automatically control, particularly if the treating physician evidence is itself inconsistent." Id. (citations and internal quotation marks omitted). "It is well established that an ALJ may grant less weight to a treating physician's opinion when that opinion conflicts with other substantial medical evidence contained within the record." Prosch v. Apfel, 201 F.3d 1010, 1013–14 (8th Cir. 2000). If the treating physician's opinion is not given controlling weight under 20 CFR § 404.1527(c)(2), it must be weighed considering the factors in 20 CFR §§ 404.1527(c)(2)-(6); see Shontos v. Barnhart, 328 F.3d 418, 426 (8th Cir. 2003) ("Where controlling weight is not given to a treating source's opinion, it is weighed according to the factors enumerated . . . ."). The ALJ must " 'give good' reasons for discounting a treating physician's opinion." Dolph v. Barnhart, 308 F.3d 876, 878-79 (8th Cir. 2002).

Dr. Stephen Skaleski was Ms. Sitting Crow's treating physician, treating her several times between April 2010 and May 2012. Ms. Sitting Crow contends the ALJ failed to give proper weight to Dr. Skaleski's opinion. "Dr. Skaleski opined that [Ms. Sitting Crow] could lift occasionally up to 20 pounds,

carry up to 10 pounds, could sit 30 minutes at one time and six hours total in an eight hour work day, stand for 10 minutes at one time or 30 minutes in a work day, and walk for five minutes at one time or 15 minutes total in an eight hour work day." (Docket 9 at ¶ 43). Dr. Skaleski "noted that [Ms. Sitting Crow] would be 'lying down' for the one hour and 15 minutes that she was not sitting, standing, and walking during the course of an eight hour work day." Id. Dr. Skaleski limited Ms. Sitting Crow's "reaching overhead to 'never' and reaching and pushing . . . to an occasional basis." Id. "He also limited her use of her feet for operation of foot controls to an occasional basis." Id. Dr. Skaleski limited Ms. Sitting Crow "to never climbing stairs and ramps, climbing ladders or scaffolds, balancing, stooping, kneeling, crouching, or crawling due to severe knee pain which 'limited all of the above activities.' " Id.

The ALJ accorded lesser weight to Dr. Skaleski's testimony for three reasons over which the plaintiff objects. First, the ALJ found the "severe limitations [were] not supported by objective clinical findings." (AR at p. 15). Second, the ALJ remarked that Dr. Skaleski gave his opinions in May 2012, "over 1 ½ years since he had seen her in September 2010."[2] Id. Third, the ALJ

---

[2]The ALJ noted in his decision that Dr. Skaleski gave his opinions in May 2012, "over 1 ½ years since he had seen [Ms. Sitting Crow] in September 2010." (AR at p. 15). This appears to be a misstatement by the ALJ. However, the misstatement is harmless as the ALJ recognized throughout his opinion that Ms. Sitting Crow had seen Dr. Skaleski a number of times between September 2010 and May 2012. See AR at 14-15 (discussing treatment notes from Dr. Skaleski dated March 2011 and August 2011).

13

found Ms. Sitting Crow's "own reported activities of daily living . . . also demonstrate[d] a much greater capacity than that opined by Dr. Skaleski." Id.

The ALJ pointed to specific examples supporting his conclusion that Dr. Skaleski's clinical findings did not support his opinions regarding Ms. Sitting Crow's limitations. Dr. Skaleski's August 2010 treatment notes "found 'no edema, no clubbing, no cyanosis, full range of motion at the shoulders and wrists, no erythema or swelling of the joints of the upper or lower extremities, strength and sensation normal in the hands and legs, and gait normal.'" (AR at 15). The August treatment notes indicated Ms. Sitting Crow "'is doing ok, bilateral knees: no swelling, erythema, deformity or warmth, range of motion essentially full, some bilateral medial joint line tenderness worse on the right, no instability, drawer sign or locking.'" Id. The ALJ also found Dr. Skaleski's September 2010 notes reflected Ms Sitting Crow's condition was "'unchanged since [her] last visit.'" Id.

The ALJ observed that Dr. Skaleski's treatment notes from August 2011 indicated the need for Ms. Sitting Crow to get back on her medication regimen and to follow "medical treatment recommendations." Id. The ALJ concluded Dr. Skaleski's notes did not support his opinion that Ms. Sitting Crow had "severe limitations," including an inability to walk more than 15 minutes in a total workday, stand more than 30 minutes in a total workday, "never climb, balance, stoop, knee[l], crouch or crawl." Id.

In addition to the ALJ finding Dr. Skaleski's notes did not support the severe limitations contained in his opinions, the ALJ pointed out Ms. Sitting Crow's "own reported activities of daily living . . . demonstrate[d] a much greater capacity than that opined by Dr. Skaleski." Id. Ms. Sitting Crow testified she attended to her personal needs and hygiene, prepared meals, performed household chores including laundry, dusting and dishes, did her own grocery shopping, drove her daughter to work, and drove herself to complete errands. Id.; see also Docket 9 at ¶¶ 47-48.

The ALJ is free to accept the opinions of a treating physician which are supported by medical evidence and plaintiff's own testimony. See House, 500 F.3d at 744-76. "[W]hen a treating physician's opinions are inconsistent [with] . . . the medical evidence as a whole, they are entitled to less weight." Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002) (citations omitted). In this case, the ALJ agreed with Dr. Skaleski's opinions in part, finding the evidence did support a conclusion Ms. Sitting Crow could not lift more than 20 pounds occasionally or 10 pounds frequently. (AR at p. 14).

The ALJ gave greater weight to the opinions of Dr. Kevin Terry and Dr. Kevin Whittle, who concluded Ms. Sitting Crow had the ability to "lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk (with normal breaks) for a total of about 4 hours in an 8-hour workday, sit (with normal breaks) for a total of about 6 hours in an 8-hour workday, was

unlimited in push and/or pull activities including operation of hand and/or foot controls other than as shown for lift and/or carry, [and] occasionally climb ramps, stairs, ladders, ropes and scaffolds, occasionally balance, stoop, kneel, crouch and crawl." (AR at p. 14). Dr. Terry also opined Ms. Sitting Crow "had no established manipulative, visual, communicative or environmental limitations except to avoid concentrated exposure to extreme cold, wetness, and humidity." Id. at pp. 14-15.

Dr. Terry reviewed Ms. Sitting Crow's medical findings and explained Ms. Sitting Crow's "statements were not fully supported by the objective clinic findings of the record, [and noted Ms. Sitting Crow's] knee symptoms seemed to predominate, with tenderness, but [she] had full range of motion on exam, with no knee swelling or synovitis, and no other joint abnormality." Id. at 15. Dr. Whittle concurred with Dr. Terry's opinions, "finding his opinions were consistent with the objective medical findings in the record." Id.

The ALJ gave good reasons for not assigning controlling weight to Dr. Skaleski's opinions. Dolph, 308 F.3d at 878-79; see also, Choate, 457 F.3d at 867-71 (affirming the ALJ's reliance on the opinion of a reviewing physician and the persuasive portions of two treating physicians in assessing residual functional capacity when the treating physicians' opinions as to the claimant's functional limitations were unsupported and inconsistent). It is not the role of the court to re-weigh the evidence and it cannot reverse the Commissioner's

decision when the decision is supported by good reason and is based on substantial evidence. Guilliams, 393 F.3d at 801.

## ORDER

Based on the above analysis, it is hereby

ORDERED that plaintiff's motion to reverse the decision of the Commissioner (Docket 12) is denied.

Dated March 20, 2014.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE